**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:24-cv-61860-LEIBOWITZ**

**RSM U.S. LLP**,

      *Plaintiff,*

*v.*

**RANDOLF NOTES**,

      *Defendant.*

_____/

## <u>ORDER</u>

**THIS CAUSE** comes before the Court on Plaintiff RSM US LLP's ("RSM") Motion to Dismiss Defendant Randolf Notes' ("Notes") Counterclaims I, II, and IV ("the Motion") [Mot., ECF No. 37], filed on March 28, 2025.  Notes filed a response [Resp., ECF No. 43], and RSM filed a reply [Reply, ECF No. 44].  The Court has reviewed the relevant filings, the record and the applicable case law.  For the following reasons, the Motion is granted.

## BACKGROUND

RSM is the fifth largest accounting firm in the United States and provides audit, tax, and consulting services.  [Compl., ECF No. 1 ¶¶ 2, 9].  RSM employed Notes, a resident of Fort Lauderdale, Florida, as a partner from May 1, 2019, to January 24, 2022, who led the firm's healthcare consulting practice and had access to RSM's confidential and trade secret information.  [*Id.* ¶¶ 2–3, 10].  RSM alleges that Notes misappropriated RSM's trade secret information when he left the firm to serve as the Managing Director at Impact Advisors ("Impact"), a competitor of RSM.  [*Id.* ¶¶ 1, 4].

As an RSM partner, Notes provided consulting services to hospitals and healthcare systems and was responsible for identifying new business opportunities, bringing in new clients and growing RSM's client relationships.  [*Id.* ¶ 18].  In this role, Notes had access to RSM's trade secrets and

confidential proprietary information.  [*Id.* ¶ 19].  Notes signed a partnership agreement with RSM in which he agreed that (1) he would not disclose or misuse RSM confidential or trade secret information and (2) that he would return all RSM property upon his separation from the firm.  [*Id.* ¶¶ 22–26].  The Partnership Agreement states that the "terms and the obligations of the parties hereunder are to be interpreted and enforced in accordance with the applicable internal statutory and common law of the State of Iowa[.]"  [Partnership Agreement ¶ 17.7].[1]  In addition to Notes' agreement, RSM attempts to protect its confidential and proprietary information through measures such as information security training for employees, system security measures, and immediately disabling employee and partner access to RSM systems in the event of a departure.  [Compl. at ¶ 32].

RSM alleges that Notes took critical RSM personnel and information to Impact, including over 1,500 documents transferred from the RSM system to Notes' personal iCloud drive.  [*Id.* ¶ 38]. These documents included RSM budgets, statements of work, margin forecast tools, internal playbooks and guides, sales projections, confidential documents regarding an internal technological tool, business strategies and growth plans, detailed financial data of RSM clients, and RSM client and target client lists.  [*Id.* ¶ 39].

Notes, in his counterclaims, alleges that he received a letter from RSM advising that he would receive the return of his capital account, which had a balance of $350,694.80 on "the first May 31 following the one-year anniversary of his separation date, in this instance May 31, 2023." [Counterclaims, ECF No. 28 ¶ 5–6].  The letter also stated that Notes would receive "a 4% return on the outstanding Capital Investment from the Separation Date through the payout date." [*Id.* ¶ 7].  On August 25, 2023, Notes sent a letter to RSM demanding the return of his capital account which had

---

[1]     Under Florida law, "courts enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013).

accrued to $372,908.67, including per diem interest.  [*Id.* ¶ 8].  RSM did not return any portion of Notes' capital account.  [*Id.* ¶ 9].  Section 12.2(a) of the Partnership Agreement between Notes and RSM, titled "Payments Following Separation" states: "If a Member's Separation occurs pursuant to Section 12.1(a) [termination by the RSM Board for cause] or (c) [voluntary resignation by the Member upon written notice], the Partnership shall pay to the Member, if not already paid, any Draw payable through the Member's Separation Date and any draw account balance."  [*Id.* ¶¶ 10–11].  Notes alleges that RSM "has exercised dominion and control over the funds to which Notes is entitled" from his capital account and has refused to turn over control to Notes.  [*Id.* ¶¶ 17–18].

On May 31, 2023, RSM sent Notes his 2022 Schedule K-1 ("K-1") [2] which stated that Notes received withdrawals and distributions of $241,615.00 from RSM in 2022.  [*Id.* ¶¶ 26–27].  Notes claims that the K-1 information provided by RSM is false, and that RSM did not make any distributions to Notes in 2022.  [*Id.* ¶ 28].  Notes demanded a corrected K-1 on November 29, 2023, but RSM refused to issue a corrected K-1.  [*Id.* ¶¶ 31–32].

Notes brings four counterclaims against RSM based on these facts:  (1) breach of contract, (2) conversion, (3) attorneys' fees pursuant to 18 U.S.C. § 1836, and (4) filing of fraudulent information under 26 U.S.C. § 7434.  [*Id.* ¶¶ 1–42].

## LEGAL STANDARD

A motion to dismiss a counterclaim is evaluated in the same manner as a motion to dismiss a complaint.  *See Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014).  To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[2]     A K-1 is an Internal Revenue Service tax form which requires a partner to describe his or her share of income, deductions, credits, etc. derived from the partnership. *See* Schedule K-1 (Form 1065), https://www.irs.gov/pub/irs-pdf/f1065sk1.pdf (last accessed April 24, 2025).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be reasonably drawn from the facts alleged.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.  "Taking the facts as true, a court may grant a motion to dismiss when, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'"  *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1370 (S.D. Fla. 2011) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

## DISCUSSION

RSM now moves to dismiss counterclaims 1, 2, and 4, arguing that the breach of contract and conversion claims fail as a matter of law and that Notes fails to state a claim for filing a fraudulent information.  [Mot.].  This Court addresses each counterclaim in turn.[3]

I.      Breach of Contract

RSM contends that Notes' breach of contract claim fails because under the Partnership Agreement RSM can "hold back and offset any amount due to Notes, including his capital investment."  [Mot. at 1].  RSM argues that Notes' alleged retention of documents containing RSM trade secret and confidential information is a breach of the Partnership Agreement that would justify withholding Notes' capital account.  [Mot. at 1–2].  The Partnership Agreement states as follows:

> Notwithstanding any other provision of this Agreement, the Partnership shall have the right (but not the obligation) to holdback and set off any amount that is due or may be due from a Member to the Partnership or any of its Subsidiaries (whether before or after such Member's Separation) under the terms of this Agreement or otherwise,

---

[3]      This Court also notes that all Notes' Counterclaims are an impermissible shotgun pleading, as each claim adopts the allegations of all preceding counts.  *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).  They are all to be dismissed on this ground alone.  Still, because the Motion is due to be granted on the substance, this Court addresses the Motion in its entirety.

including any amount arising from a breach of this Agreement (further including any breach of the covenants set forth in Article 10), against any other amounts or accounts due or that may be due to the Member from the Partnership or any of its Subsidiaries, including (as applicable) the Member's Capital Investment, amount payable (if any) under the Partnership Value Allocation Plan or other allocation of income under the Income Allocation Plan or other payment due under any other agreements, or plans or policies of the Partnership or any Subsidiary. The Partnership is **not required to first obtain a judgment or award with respect to its set-off rights** in any given circumstance or with respect to any given Member in order to invoke its set-off rights hereunder, and also **may holdback any and all amounts during such time as the existence of a potential offset is under review or the amount of setoff is in the process of being determined.**

[*Id.* at 2–3 (citing Partnership Agreement, ECF No. 37-1 ¶ 11.4 (emphasis in original)].

As stated above, Iowa law governs the Partnership Agreement, and under Iowa law contracts are interpreted in accordance with their plain and ordinary meaning. *Westlake Invs., L.L.C. v. MLP Mgmt. L.L.C.*, No. 4:09-CV-00095-JAJ-RA, 2010 WL 7361159, at *5 (S.D. Iowa Mar. 3, 2010). This section applies to the current situation despite the word "shall" in Section 12.2(a) (which ordinarily acts as a command) because the section qualifies the word "shall" – Section 12.2 is "subject to the other provisions of this Agreement[.]" [Partnership Agreement ¶ 12.2]. This qualification is unambiguous – Section 12.2 is subject to Section 11.4 and, therefore, this instant dispute hinges on the interpretation of Section 11.4.

As Notes concedes, Section 11.4 permits "RSM to withhold from a partner a specific dollar amount that it reasonably believes is the result of the partner's breach of the Agreement." [Resp. at 4]. Notes argues that Section 11.4 requires RSM to calculate the specific amount that resulted from Notes' alleged breach and subtract it from the amount owed to Notes upon his resignation. [*Id.* at 5]. But that process is what is presently occurring in this lawsuit. RSM brought a breach of contract action against Notes, claiming that Notes breached the Partnership Agreement at issue here. This litigation is the process by which the setoff is being determined via its potential calculation of damages stemming from Notes' alleged breach of the Partnership Agreement. Until this litigation concludes,

that process is ongoing and as a matter of law, RSM has not breached the contract.  Once the litigation concludes, however, RSM must immediately return Notes' capital account minus any damages proved.

Notes argues that this result is absurd and far broader than what the Partnership Agreement permits.  Notes claims that Section 11.4 mandates only a very specific and very narrow mechanism by which RSM may exercise its holdback rights.  But the execution of that mechanism – where RSM determines the amount of damages and sets it off from his capital account – is what RSM is doing in this very lawsuit.  RSM cannot determine its damages (if any) by itself and must do so in this action.  Any cause of action against RSM cannot accrue before RSM determines the amount to hold back from Notes.  *See McGuffin v. Willow Cmty. Sch. Dist.*, 182 N.W.2d 165, 168 (Iowa 1970) (explaining a breach of contract action is premature where an employer's duties in a contract are ongoing).  Accordingly, Notes' breach of contract claim must be dismissed without prejudice.

II.     Conversion

RSM next moves to dismiss Notes' counterclaim for conversion, arguing that a conversion claim must be dismissed where it arises solely out of a breach of contract claim, under either Florida or Iowa law.  [Mot. at 4 (citing *Larew v. Hope L. Firm, P.L.C.*, 977 N.W.2d 47, 63 (Iowa 2022) ("In general, no conversion claim exists where the dispute arises solely out of contractual obligations.") and *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) ("Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.")].

Notes argues that the two claims are premised on two different bases:  (1) the breach of contract claim on RSM's violation of the Partnership Agreement and its refusal to return his capital account to him, and (2) the conversion claim on RSM's duty to return Notes' property that rightfully belongs to him.  [Resp. at 7].  The issue with Notes' argument is that the property which Notes seeks returned to him is control over the capital account.  [*See* Counterclaims ¶ 17 ("RSM has exercised

dominion and control over the funds to which Notes is entitled from, *inter alia*, his Capital Draw Account.")].  The funds which form the basis for Notes' conversion claim are in his capital account – which is also the basis for the breach of contract claim.  Thus, under either Iowa or Florida law, Notes' counterclaim for conversion arises solely out of his breach of contract claim and must be dismissed without prejudice.  *See Woodard v. Mid-Atlantic Fin. Co.*, No. 162014CA002593AXXXMA, 2016 Fla. Cir. LEXIS 39125, at *5 (Fla. Cir. Ct. Apr. 5, 2016); *cf. Midwest Media Grp., Inc. v. Fusion Ent., Inc.*, 825 N.W.2d 327 (Iowa Ct. App. 2012) (finding a conversion claim was not precluded by a breach of contract claim where the damages for each count stemmed from different property).

III.    Filing Fraudulent Information (26 U.S.C. § 7434)

Lastly, RSM claims that Notes fails to state a counterclaim for filing a fraudulent information return under 26 U.S.C. § 7434(a), because K-1s are not "information returns" as defined in the statute. [Mot. at 6].  Under Section 7434(a), "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a).  The term "information return" means any statement described in Section 6724(d)(1)(A), which includes:

> any statement of the amount of payments to another person required by—(i) section 6041(a) or (b) (relating to certain information at source), (ii) section 6042(a)(1) (relating to payments of dividends), (iii) section 6044(a)(1) (relating to payments of patronage dividends), (iv) section 6049(a) (relating to payments of interest), (v) section 6050A(a) (relating to reporting requirements of certain fishing boat operators), (vi) section 6050N(a) (relating to payments of royalties), (vii) section 6051(d) (relating to information returns with respect to income tax withheld), (viii) section 6050R (relating to returns relating to certain purchases of fish), or (ix) section 110(d) (relating to qualified lessee construction allowances for short-term leases)[.]

26 U.S.C. § 6724(d)(1)(A).  RSM notes that K-1s are absent from this list, and other district courts have recognized that a K-1 is not an "information return" for purposes of Section 7434 claims.  [Mot. at 6–7 (citing *Cooke v. Lancelotta*, No. CV SAG-22-297, 2022 WL 1027775, at *3 (D. Md. Apr. 5, 2022); *Bruehl v. Duke Univ.*, No. 1:21CV590, 2022 WL 1137295, at *8 (M.D.N.C. Apr. 18, 2022)].

7

In response, Notes argues that Section 7434(f)'s command that "information return" means any statement described in Section 6724(d)(1)(A) does not mean that *only* those types of statements described in Section 6724(d)(1)(A) are "information returns." [Resp. at 8–9]. Such an interpretation, however, is contrary to the plain text of the statute. *See Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999) ("It is not the business of courts to rewrite statutes[.]"). Congress has defined the term "information return," and this Court must interpret and apply the statute as written.[4]

Notes cites *Bach v. Bach*, No. 8:21-CV-2964-SDM-TGW, 2022 WL 19914435, at *2 (M.D. Fla. July 27, 2022) to argue that because the court there dismissed a Section 7434 claim on grounds other than that a K-1 was not an "information return," this interpretive issue is unsettled. However, just because the *Bach* court did not dismiss the Section 7434 claim there on the explicit basis that the K-1 was not an "information return," does *not* mean a K-1 *is* an "information return," or that the issue is unsettled. The *Bach* court did not address the question specifically, and it is therefore irrelevant that it decided to dismiss the claim on other grounds.

Notes' other legal citations are likewise irrelevant or distinguishable. [*See* Resp. at 8–9 (citing *Hawkins v. Hawkins*, 437 S.W.3d 171, 175 (Ky. Ct. App. 2014) (not discussing Section 7434); *Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636 (2008), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010) (not discussing Section 7434); *Shirley v. U.S.*, No. 3:11-cv-323-DW, 2013 WL 504896 (W.D. Ky. Feb. 8, 2013) (not discussing Section 7434)). Notes makes no further argument that the K-1 should be considered an "information return" under Section 7434.

This Court adopts the reasoning of the District of Maryland and finds that the K-1 in this case is not an "information return" for purposes of Section 7434. *See Cooke*, 2022 WL 1027775, at *5

---

[4] By responding to the Motion and making only this argument, Notes has waived any argument that the K-1 at issue in this case meets one of the various definitions of "information return" under 26 U.S.C. § 6724(d)(1)(A). *See United States v. Sineneng-Smith*, 590 U.S. 371, 372 (2020).

("Because § 6042 does not appear to require the filing of Form 1065 or Schedule K-1, and because the information Defendants reported in their Form 1065s and Schedule K-1s does not meet the definition of "dividend" under § 6042's implementing regulations, this Court finds that those filings are not "information returns" for purposes of § 6724(d)(1)(A)(ii)."). Notes has not alleged or argued that the allegedly false payments on his K-1 are "dividends" for purposes of Section 6742(d)(1)(A)(ii). *See id.* ("Clearly, the dividends at issue in this case do not fall into any of those three categories because the corporate Defendants are not corporations, the Plaintiffs are not shareholders, and none of the parties is a stockbroker or regulated investment company.") (citing 26 C.F.R. § 1.6042-3). Further, Notes does not allege or argue that the K-1 here satisfies the definition of "interest" under 26 U.S.C. § 6049. *See* 26 U.S.C. § 6049(b) (defining "interest"). Beyond dividends and interest, the K-1 does not even arguably meet any of the other definitions of "information return" in Section 6724, and Notes does not suggest otherwise. [*See* Schedule K-1, ECF No. 28-2].

Because the K-1 at issue here does not meet the definition of "information return," and Notes makes no convincing argument in the face of contrary case law, his counterclaim is due to be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion [**ECF No. 37**] is **GRANTED.** Counterclaims I, II, and IV are dismissed **without prejudice**.

**DONE AND ORDERED** in the Southern District of Florida on April 29, 2025.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record